ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta
NOV 12 2024
KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALLWELL JOHN IBAMA | Criminal Indictment<br><br>No. 1:21-CR-054<br><br>First Superseding Indictment |

THE GRAND JURY CHARGES THAT:

### Count One

1. Beginning on or about April 30, 2020 and continuing through on or about December 14, 2020, in the Northern District of Georgia and elsewhere, the defendant, ALLWELL JOHN IBAMA, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material fact, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation Title 18, United States Code, Section 1343.

### BACKGROUND

At all times relevant to this indictment:

U.S. Department of Labor, Employment and Training Administration

2. The U.S. Department of Labor, Employment and Training Administration is the federal agency that provides oversight in the Federal-State Unemployment Insurance Program, which provides unemployment benefits to eligible workers who are unemployed through no fault of their own as determined under state law and who meet other state eligibility requirements. Unemployment Insurance ("UI") payments, also known as benefits, are intended to provide temporary financial assistance.

3. Eligibility for unemployment insurance, benefit amounts, and the length of time benefits are available are determined by the state law under which unemployment insurance claims are established. In general, benefits are based upon a percentage of an individual's earnings over a recent 52-week period – up to a state-established maximum amount. Benefits can be paid for a maximum of 26 weeks in most states.

Illinois Department of Employment Security

4. The Illinois Department of Employment Security ("IDES") is the state agency that oversees the UI program in the State of Illinois. Through this agency, UI benefits were issued to some Illinois residents who were unemployed because of the nationwide COVID-19 pandemic.

5. In general, a person seeking UI benefits through the IDES must complete an application that includes, among other things, the Claimant's name, date of birth, social security number, and the reason why the Claimant is unemployed.

6. In the State of Illinois, unemployment compensation funds are issued either by direct deposit into the Claimant's designated bank account or by the issuance of a debit card.

Ohio Department of Job and Family Services

7. The Ohio Department of Job and Family Services ("ODJFS") is the state agency that oversees the UI program in the State of Ohio. Through this agency, UI benefits were issued to some Ohio residents who were unemployed because of the nationwide COVID-19 pandemic.

8. In general, a person filing a UI claim submits an application that includes, among other things, the Claimant's name, date of birth, social security number, and the reason why the Claimant is unemployed.

9. In the State of Ohio, unemployment compensation funds are issued either by direct deposit into the Claimant's designated bank account or by the issuance of a debit card.

Massachusetts Department of Unemployment Assistance

10. The Massachusetts Department of Unemployment Assistance ("MADUA") is the state agency that oversees the UI program in the State of Massachusetts. Through this agency, UI benefits were issued to some Massachusetts residents who were unemployed because of the nationwide COVID-19 pandemic.

11. In general, a person filing a UI claim can do so online or by telephone. The application includes, among other things, the Claimant's name, date of birth, social security number, and the reason why the Claimant is unemployed.

12. In the State of Massachusetts, unemployment compensation funds are issued either by direct deposit into the Claimant's designated bank account or by the issuance of a debit card.

Maine's Department of Labor

13. Maine's Bureau of Unemployment Compensation ("MDOL") is the state agency that oversees the UI program in the state of Maine. Through this agency, unemployment benefits were issued to some Maine residents who were unemployed because of the nationwide COVID-19 pandemic.

14. In general, a person seeking unemployment benefits through the MDOL must complete an online application that includes, among other things, the Claimant's name, date of birth, social security number, and the reason why the Claimant is unemployed.

15. In the State of Maine, unemployment compensation funds are issued either by direct deposit into the Claimant's designated bank account or by the issuance of a debit card.

The Employment Security Department of Washington State

16. The Employment Security Department of Washington State ("ESDWA") is the state agency that oversees the UI program in Washington State. Through this agency, unemployment benefits were issued to some Washington residents who were unemployed because of the nationwide COVID-19 pandemic.

17. In general, a person seeking unemployment benefits through the ESDWA must complete an online application that includes, among other things, the

4

Claimant's name, date of birth, social security number, and the reason why the Claimant is unemployed.

18. In the State of Washington, unemployment compensation funds are issued either by direct deposit into the Claimant's designated bank account or by the issuance of a debit card.

The CARES Act

19. The CARES Act was designed to mitigate the economic effects of the COVID-19 pandemic, in part, by creating a new temporary federal program called Pandemic Unemployment Assistance ("PUA") that provided unemployment benefits and funding to states for the administration of the program. An individual receiving PUA benefits could also receive a $600 weekly benefit in federal funds under the Federal Pandemic Unemployment Compensation ("FPUC") program if he or she were eligible for such compensation for the week claimed.

SCHEME AND ARTIFICE TO DEFRAUD

20. It was part of the scheme that co-conspirators electronically submitted to IDES, MADUA, MDOL, ODJFS, and ESDWA applications for UI benefits and PUA payments that fraudulently listed the names, dates of birth, and social security numbers for individuals without their knowledge and consent.

21. It was part of the scheme that, on or about May 19, 2020, defendant IBAMA electronically provided to a co-conspirator the bank account number and information for Wells Fargo bank account number ending in 9088.

5

22. On or about May 19, 2020, a false and fraudulent application for UI benefits that fraudulently listed claimant D. R. was electronically submitted to the MDOL. The application requested direct deposit payment of benefits, and it included the bank account information for Wells Fargo bank account ending in 9088.

23. On or about May 19, 2020, a false and fraudulent application for UI benefits that fraudulently listed the claimant name S. P. was electronically submitted to the MADUA. The application requested direct deposit payment of benefits, and it included the bank account information for Wells Fargo bank account ending in 9088.

24. On or about May 21, 2020, the MDOL deposited on behalf of claimant D. R. approximately $9,095 into Wells Fargo bank account ending in 9088.

25. On or about May 22, 2020, the MADUA deposited on behalf of claimant S. P. approximately $12,700 into a Well Fargo bank account ending in 9088.

26. It was part of the scheme for defendant IBAMA to advise co-conspirators when funds were deposited into the Wells Fargo bank account, to include electronically sending to co-conspirators images depicting the bank website showing the deposit of UI and PUA funds.

27. It was also part of the scheme for co-conspirators to withdraw UI benefits and PUA payments from the bank account and to deposit funds into other accounts, among other things.

28. It was also part of the scheme that co-conspirators provided Green Dot debit card account numbers to the state agencies for the direct deposit of UI benefits and PUA funds.

29. It was part of the scheme that the co-conspirators acquired Green Dot debit cards that were subsequently loaded with UI and PUA funds deposited by state agencies. The co-conspirators withdrew and caused to be withdrawn UI and PUA funds from those cards by making cash withdrawals from ATMs and making various purchases, among other things.

All in violation of Title 18, United States Code, Section 1349.

## Count Two

30. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 2 through 29 of this Indictment as if fully set forth herein.

31. Beginning on or about April 30, 2020 and continuing through on or about December 14, 2020, in the Northern District of Georgia and elsewhere, the defendant, ALLWELL JOHN IBAMA, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to knowingly conduct and attempt to conduct financial transactions in and affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the

nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

32. Upon conviction the offense alleged in Count One of this Indictment, the defendant, ALLWELL JOHN IBAMA, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of said violation, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment.

33. Upon conviction of the offense alleged in Count Two of this Indictment, the defendant, ALLWELL JOHN IBAMA, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count Two of this Indictment.

34. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A _____ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
  *United States Attorney*

*Tracia M. King*
TRACIA M. KING
  *Assistant United States Attorney*
Georgia Bar No. 421380

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181